## Case No. 12,220.

### The SAILOR'S BRIDE.

[Brown, Adm. 68;[1] 17 Leg. Int. 245.]

Circuit Court, D. Michigan. Dec., 1859.

SALVAGE — QUANTUM MERUIT — JURISDICTION OF CLAIMS AGAINST FOREIGNERS.

1. Salvage being the compensation allowed to persons by whose assistance a ship or cargo is saved from impending peril, if the property is not benefited by the exertions of the salvors, they can claim no compensation as salvage.

2. But if an effort be made in good faith, with means believed to be adequate, the salvor may

recover something in the nature of a quantum meruit, though his efforts are unsuccessful.

[Distinguished in The Brabo, 33 Fed. 885.]

3. Though a court of admiralty is not bound to take jurisdiction of controversies growing out of contracts between foreigners having a domicile in this country, it may lawfully exercise it, and ought to do so, where justice requires it.

4. It has jurisdiction in a case of salvage rendered by an American tug to a British vessel in Canadian waters.

[Appeal from the district court of the United States for the district of Michigan.]

This was a case of salvage in which the libellant alleged that Evans, being the owner of the steamtug Fields, a vessel duly enrolled and licensed at Detroit, and used in navigating the lakes and rivers connected therewith, in descending the St. Clair rapids, discovered the schooner Sailor's Bride aground near the Canadian shore, and being informed that she was desirous of being hauled off, after some delay, procured a hawser strong enough, as was supposed, to draw the vessel from the place where she was aground, but the cable, not being of sufficient strength, parted; another, being procured, was obliged to be cut to preserve the tug from damage. In making this fruitless attempt, the tug was engaged six hours, and the libellant alleged that the usual charge for such service was at the rate of ten dollars an hour. In the answer it was averred that a special contract was made with the master of the tug that unless the schooner was drawn off, no compensation was to be charged.

W. A. Moore and Mr. Blockmore, for libellant.

Alfred Russell and Mr. Walker, for claimant.

McLEAN, Circuit Justice. The schooner Sailor's Bride was a Canadian vessel, and was aground in the St. Clair rapids, near the Canadian shore. The tug, as appears, had been regularly enrolled and licensed at Detroit, the home port of the vessel, and was used in navigating the waters of Michigan and the adjoining states. But it seems, also, to have been used in towing boats over the St. Clair rapids, or into Detroit and other ports. On the present occasion it was performing the duties of a tug in attempting to relieve the Sailor's Bride. This was a temporary duty, involving no right of navigation between two or more states, and therefore, was not within the rule of navigation as prescribed in the cases cited. Allen v. Newberry, 21 How. [62 U. S.] 244; McGuire v. Card, Id. 248; Jackson v. Magnolia, 20 How. [61 U. S.] 296. A tug engaged in towing vessels into port is, for the time being, connected with the vessel towed, and partakes of its character. The same may be said of a towage over the St. Clair rapids or any place of difficulty. And the only question which arises is, whether an American vessel so employed may do an office of kindness to a ves-

---

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

sel of a foreign country, as alleged to have been done or attempted to be done in this case. To hold that this may not be done would be a strange perversion of those laws of commercial intercourse which characterize the civilized nations of the world.

A salvage service is defined to be the compensation allowed to other persons by whose assistance a ship or its loading may be saved from impending peril. This service must be within the admiralty jurisdiction, and may be rendered spontaneously or by request. And it is admitted that salvage is a compensation for actual services rendered. But as, in this case, the vessel remained aground, and the owner was in no respect benefited by the efforts of the master of the tug, no compensation can be claimed on that ground.

Considering the extent of our commercial intercourse with other nations, and the numbers of foreign vessels which annually visit our ports, it becomes important to inquire to what extent foreigners, transiently here, are entitled to seek redress on the instance side of the American admiralty. Mr. Justice Story was of opinion that, with reference to what may be deemed the public law of Europe, a proceeding in rem might well be sustained by our courts where the property of a foreigner was within our jurisdiction. Nor was he able to perceive how the exercise of such a judicial authority clashes with any principles of public policy. On the contrary, he thought the refusal might well be deemed a disregard of national comity, inasmuch as it would be withholding from a party the only effectual means of obtaining relief. The jurisdiction of the admiralty in matters of contract depends not on the character of the parties, but on that of the contract, whether maritime or not; when, therefore, its jurisdiction once attaches to the subject-matter, it will exercise it conformably with the law of nations, or with the lex loci contractus, as the case may require. The result, therefore, of the American authorities seems to be that, though the admiralty courts of this country are not bound to take jurisdiction of controversies growing out of maritime contracts between foreigners having a domicile in this country, as they are between parties citizens or residents here, yet that they may lawfully exercise it, and ought to do so, in obedience to the demands of justice.

Two depositions on the part of the claimant have been taken, those of Peter Duas and Jas. Bogue, and it is objected that they were taken without notice. This is unfortunate for the claimant, as both of these witnesses say that compensation was not to be made to the master of the tug if the Sailor's Bride should not be drawn off. But as no notice was given of taking the depositions, they are necessarily excluded from the jury. The other deposition, that of Henry P. Odell, states that the claimant requested the master of the tug to pull off his vessel, which he attempted to do, but failed. But no facts were stated by this witness showing any special contract made by the parties, and, although in the answer it is alleged no compensation was to be paid if the Sailor's Bride should not be removed, the depositions proving the fact have been suppressed.

The case stands upon the statement of one witness as to the contract to haul off the vessel. If this be placed upon the footing of salvage, as the effort to remove the vessel was ineffectual, and no benefit resulted to the claimant, no compensation can be paid on that ground. As the evidence does not show any agreement to pay a specific sum to relieve the vessel in jeopardy, and as a claim for salvage cannot be maintained, it can only rest on a quantum meruit. And at this point we have to meet the objection that although the effort was made it was fruitless, no benefit being done to the claimant. Under such circumstances, can the libellant recover? No stipulation was entered into that no compensation should be paid unless the vessel should be pulled off. The effort was made in good faith, and with means that were believed to be adequate. Six hours were laboriously employed to remove the vessel, and no want of skill was charged against the master of the tug; one cable was broken, and another was cut, in trying to accomplish the object. Under the circumstances, while I am inclined to think the master of the tug is entitled to some compensation, I do not think he is entitled to the same pay as if he had been successful. He was disappointed in his own efforts, and so was the claimant. Upon the whole, I will abate one-half of the amount allowed to the libellant, and affirm the residue of the decree with costs.

Decree varied.

---

SAINE (SWOPE v.). See Case No. 13,705.

ST. ANDER, The. See Case No. 2,568.

ST. CLAIR (RIGGS v.). See Case No. 11,-829.

ST. CLAIR COUNTY (LYELL v.). See Case No. 8,621.

ST. CLAIR COUNTY (NICOLAY v.). See Case No. 10,257.